# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ISIDOR HERNANDEZ,

      Petitioner,

v.                                        Case No. 3:15-cv-1414-J-32JRK

FLORIDA ATTORNEY
GENERAL,
et. al.,

      Respondents.

_____

## ORDER

## I. <u>Status</u>

Petitioner, Isidor Hernandez, a civil detainee at the Florida Civil Commitment Center in Arcadia, Florida, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. <u>See</u> Doc. 1. He is proceeding on an Amended Petition in which he challenges his civil commitment under Florida's Sexually Violent Predator Act. <u>See</u> Doc. 10 (Petition). Respondents filed a Response (Doc. 27; Resp.) and a Supplemental Response (Doc. 42; Supp. Resp.).[1] Petitioner filed a Reply (Doc. 33; Reply) and a Supplemental Reply (Doc. 45; Supp. Reply). This case is ripe for review.

---

[1] Attached to the Response are several exhibits that Respondents cite to in their Response and Supplemental Response. The Court cites to the exhibits as "Resp. Ex."

## II.    Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## III.   <u>Analysis</u>

### *Ground One*

Petitioner raises three sub-claims premised upon allegations that his civil commitment trial was unfair because the trial court allowed the state to present hearsay testimony concerning Petitioner's prior crimes and mental hospital commitments. Doc. 10 at 4-10. Petitioner asserts that this unreliable hearsay testimony was so prejudicial that it tainted the proceedings. <u>See</u> Doc. 10 at 4-10 (citing Fla. Stat. § 394.9155(5); <u>Jenkins v. State</u>, 893 So. 2d 783 (Fla. 5th DCA 2002)).

Respondents contend that the federal nature of these claims was never presented to the state court, thus, they are unexhausted. Doc. 27. They further allege that Petitioner's claims are otherwise without merit because the state court's adjudication is entitled to deference. <u>Id.</u> In his Reply, Petitioner asserts that these witnesses testified to events that occurred outside of their personal knowledge, thus, violating Petitioner's Fourteenth Amendment procedural due process right to

confrontation and cross examination. <u>See generally</u> Doc. 33 (citing <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); <u>Walker v. Hadi</u>, 611 F.3d 720 (11th Cir. 2010)). Assuming the federal nature of these sub-claims is properly exhausted, the Court finds they are without merit because the state court's adjudication of these issues is entitled to deference.

Petitioner's commitment under the Jimmy Ryce Act is civil in nature. <u>See Westerheide v. State</u>, 832 So. 2d 93, 99-104 (Fla. 2002). As such, the state was allowed to present hearsay evidence pursuant to section 394.9155(5), Florida Statutes, which provides:

> Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.

To the extent Petitioner argues that <u>Crawford</u> is applicable to these sub-claims, the Court notes that the reasoning in <u>Crawford</u>, 541 U.S. at 36 (refining Confrontation Clause jurisprudence under the Sixth Amendment, holding out-of-court testimonial statements may not be admitted against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross examine the declarant) has not been extended by the United States Supreme Court to civil proceedings. <u>See Walker</u>, 611 F.3d at 723. "[T]he Sixth Amendment right to confrontation is specifically limited to "criminal prosecutions." <u>United States v. Morris</u>, 140 F. App'x. 138, 143 (11th Cir. 2005) (per curiam) (citations omitted) (finding <u>Crawford</u> inapplicable to

probation or supervised release revocation proceedings).

In Sub-Claim One, Petitioner alleges that the trial court erred in allowing state witness, Dr. Gregory Prichard, to testify regarding the contents of clinical summaries generated during Petitioner's prior eleven-year hospital commitment and Petitioner's competency determinations in prior criminal cases. Of import to this claim is a pretrial motion in limine filed by Petitioner's trial counsel, in which Petitioner sought to prohibit the state from adducing "unreliable hearsay" testimony regarding "an alleged 1987 rape involving a person who is now deceased and a 1985 incident." Resp. Ex. B at 39-40. The trial court ultimately denied the motion in limine and allowed the state to present the evidence. Resp. Ex. F at 12-25, 161-62. At trial, relying on the Florida State Prison competency evaluations and clinical summaries, Dr. Prichard testified about Petitioner's 1985 sexual battery of a twenty-five-year-old victim when Petitioner was sixteen years old, which resulted in Petitioner serving a probationary sentence. Resp. Ex. F at 438-44. He further testified that while Petitioner was on probation, he sexually assaulted a fifteen-year-old schoolmate while using a weapon in 1987 when Petitioner was seventeen. Resp. Ex. F at 438-45. Dr. Prichard explained that Petitioner was charged with the 1987 sexual battery, but the charges were ultimately dismissed when Petitioner was determined to be incompetent to stand trial and committed to Florida State Hospital for eleven years. Id. at 445.

With the help of appellate counsel, Petitioner raised the issues in Sub-Claim One during his direct appeal. Resp. Ex. G at 18-32. The state filed an answer brief arguing that this testimony was relevant to show Petitioner's propensity to commit

sexually violent crimes in the future, that Petitioner began his sexual violence at an early age, and that his violence escalated to the use of weapons. Resp. Ex. H. The First District Court of Appeal per curiam affirmed Petitioner's civil commitment without issuing a written opinion. Resp. Ex. J. In the event the state appellate court adjudicated these claims on the merits, the state court's decision is entitled to deference.

Upon review of the record, this Court concludes that the state court's adjudication of this Sub-Claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. While Petitioner attempts to import Crawford-like principles to create a Fourteenth Amendment due process claim based on the state's use of "unconfronted" hearsay at his commitment trial, Petitioner cites no decisions of the United States Supreme Court or any other source of "clearly established federal law" to support that view. Thus, Sub-Claim One is due to be denied.

In Sub-Claim Two, Petitioner avers that the trial court erred in allowing Dr. Prichard and Dr. E.R. McKenzie to testify regarding their opinions that Petitioner was malingering after being deemed incompetent to stand trial for the 1987 offense. Resp. Ex. F 446-50, 514-15. Initially, the Court notes that Petitioner testified during his civil commitment trial and conceded that he previously wrote letters in which he admitted he was pretending to be insane during his commitment at Florida State Hospital.

Resp. Ex. F at 217-20. Further, Dr. Prichard was accepted without objection as an expert in sex offender evaluation and treatment, and attested that Petitioner exhibited signs of malingering. Id. at 447-48. Dr. McKenzie testified that he evaluated Petitioner while he was at Florida State Hospital and stated that Petitioner seemed to function at a higher level than his IQ would suggest. Id. at 514-15.

With the help of appellate counsel, Petitioner challenged this testimony on direct appeal. Resp. Ex. G. In its answer brief, the state argued that Petitioner's malingering and IQ were relevant to both doctors' evaluations and opinions. Resp. Ex. H. Thus, they maintained that this testimony was relevant and reliable. Id. The First DCA per curiam affirmed Petitioner's civil commitment without issuing a written opinion. Resp. Ex. J. In the event the state appellate court adjudicated these claims on the merits, the state court's decision is entitled to deference.

Upon review of the record, this Court concludes that the state court's adjudication of this Sub-Claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. While Petitioner attempts to import Crawford-like principles to create a Fourteenth Amendment due process claim based on the state's use of "unconfronted" hearsay at his commitment trial, Petitioner does not reference any decisions of the United States Supreme Court or any other source of "clearly established federal law" to support that view. As such, Sub-Claim Two is due to be denied.

In Sub-Claim Three, Petitioner contends that the trial court erred in permitting Department of Corrections Specialist Linda Oakley to offer hearsay testimony about Petitioner's past behavioral problems. Petitioner contests Oakley's testimony that Petitioner was placed on community control in 1987 for sexual battery, that he violated that community control by escaping, and that he went to prison three times. Resp. Ex. F at 342-43.

With the help of appellate counsel, Petitioner challenged the admission of Oakley's testimony on direct appeal. Resp. Ex. G. In its answer brief, the state argued that Oakley's testimony established that she had been a DOC probation specialist for twenty-nine years, who supervised sex offenders and high-risk prison releasees. Resp. Ex. H. She explained that DOC routinely kept records on a released person's activity on probation, and that she was familiar with DOC's probation documents, and regularly testified in court about such documents. Id. She reviewed Petitioner's probation documents and noted that they were made in the regular course of business. Id. Thus, the state argued that the trial court did not err because Oakley's testimony was relevant and reliable. The First DCA per curiam affirmed Petitioner's civil commitment without issuing a written opinion. Resp. Ex. J. In the event the state appellate court adjudicated this claim on the merits, the state court's decision is entitled to deference.

Upon review of the record, this Court concludes that the state court's adjudication of this Sub-Claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was

not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[5] While Petitioner attempts to import Crawford-like principles to create a Fourteenth Amendment due process claim based on the state's use of "unconfronted" hearsay at his commitment trial, Petitioner fails to cite to a decision of the United States Supreme Court or any other source of "clearly established federal law" to support that view.[6] Thus, the decision of the First District Court of Appeal is entitled to deference under AEDPA, and Sub-Claim Three is due to be denied.

---

[5] Petitioner cites to Special v. West Boca Medical Center, 160 So. 3d 1251 (Fla. 2014), to support a claim that the First DCA used the wrong harmless error standard during his appeal. See Doc. 10 at 8-9. In Special, the Florida Supreme Court changed the test for harmless error in civil appeals, holding the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict. At the time Petitioner and the state filed their appellate briefs, the Florida Supreme Court had not yet ruled on a pending motion for rehearing in Special. However, the Florida Supreme Court denied rehearing on March 26, 2015, and the First DCA issued its opinion affirming Petitioner's civil commitment on May 27, 2015. See Resp. Ex. J. Nevertheless, for purposes of this Order, the Court assumes the state appellate court adjudicated Petitioner's appellate claim on the merits.

[6] Petitioner references Jenkins v. State, 803 So. 2d 783 (Fla. 5th DCA 2001), to support his claim of a due process right to confrontation under the Fourteenth Amendment. Jenkins stands for the proposition that hearsay testimony regarding prior crimes only contains an indicia of reliability if the respondent pled or was convicted of the crime. Id. at 785. Here, Dr. Prichard testified that Petitioner pled to the 1985 crime. Resp. Ex. F at 444. As to the 1987 crime, Dr. Prichard explained that the state charged Petitioner with sexual battery, but Petitioner was deemed incompetent to stand trial and was sent to Florida State Hospital. Id. at 445-46. He stated that after Petitioner failed to regain competency within two years of his commitment, the state had to drop the 1987 charges. Id. at 446-47. He further testified that it is common for defendants to pretend to be incompetent in order to get their charges dismissed. Id. at 446. The Court gives deference to the state court's determination that this was reliable testimony.

***Ground Two***

Petitioner contends that the trial court erred in allowing Dr. Prichard to testify to his interpretation of the Static-99R test without first conducting a <u>Daubert</u>[7] or section 90.702, Florida Statutes, analysis. Doc. 10 at 12-13. Respondents aver that the federal nature of this claim is unexhausted and it is otherwise without merit because the state court's adjudication is entitled to deference. Doc. 42. In his Supplemental Reply, Petitioner makes conclusory allegations that the Static-99R is invalid for use in humans.[8] Doc. 45 at 8-9.

Because Petitioner briefed the <u>Daubert</u> standard on direct appeal, the Court assumes arguendo that this claim is properly exhausted. Nevertheless, the state court's adjudication of this claim is entitled to deference. The Eleventh Circuit Court of Appeals has outlined a three-part test by which to determine whether expert testimony is admissible: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. <u>Tuscaloosa v. Harcros Chemicals, Inc.</u>, 158 F.3d 548, 562

---

[7] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

[8] In his Supplemental Reply, Petitioner also alleges for the first time that Dr. Prichard's "trial testimony was predicated upon his selfish desire to sexually control the relationship he and Petitioner were having and had." Doc. 45 at 9. The Court declines to address such allegations.

(11th Cir. 1998).

Contrary to Petitioner's current allegation, prior to Dr. Prichard's trial testimony the trial court conducted a <u>Daubert</u> hearing in which Dr. Prichard proffered testimony regarding his expert opinion and the Static-99R test. Resp. Ex. F at 366-97. Dr. Prichard said he performed 500 to 600 evaluations of potential sexually violent predators, had been practicing psychology for seventeen years, and had testified as an expert witness hundreds of times. Resp. Ex. F at 366-68.

In forming his opinion that Petitioner should be civilly committed, Dr. Prichard said one of the tests he relied on was the Static-99R, an actuarial tool used to calculate an offender's recidivism risk. Resp. Ex. F at 368-69. Dr. Prichard testified that the broad scientific principle that underlies the Static-99R is that it bases a risk estimate on research-generated data, "to make sure your estimates are based on research and scientifically derived variables rather than clinical judgment, things that aren't based in research." <u>Id.</u> at 378. He likened the approach to any actuarial that predicts risk based on data, such as insurance actuarial tables that attempt to identify high-risk drivers. <u>Id.</u> at 378-79.

He stated that he is required by contract to administer the Static-99R test when conducting evaluations and he has administered the test an estimated 100 times, compared with 1,000 times he has administered its predecessor, the Static-99. <u>Id.</u> at 369. He averred that the Static-99R is generally accepted as a risk assessment tool and is the most widely used instrument testing such in the United States and "multiple other countries." <u>Id.</u> at 372-73.

Dr. Prichard informed that the Static-99 and Static 99R have been subjected to peer review and publication. Id. at 370. The Static-99 was criticized as over predicting risk by not considering that risk is reduced with age, and the Static-99R addressed that factor. Id. at 370. According to Dr. Prichard, there are standards controlling the applications or operations of the Static-99R. Id. at 370-71. He explained that the Static-99R's potential error rate is known "in a general way," and acknowledged that the research showed that there is some error, as is the case in any kind of prediction of human behavior, adding "the important issue seems to be that it enhances our ability to predict risk. It's better than clinical judgment so it enhances our abilities, which makes a valuable instrument." Resp. Ex. F at 371.

Dr. Prichard testified that he administered the Static-99R to Petitioner, whose score was in the acceptable range for Static-99R tests, but clearly in the high-risk category. Id. at 371-74. He stated that other variables that he considered during his analysis, absent the Static-99R, also suggested Petitioner was a high risk. Id. at 374. According to Dr. Prichard, Petitioner's Static-99R score and other variables led him to the opinion that Petitioner met the criteria for involuntary civil commitment. Id. at 475-76. After hearing testimony from Dr. Prichard and argument from counsel and the state, the trial court found the following:

> The Court finds that the testimony before the Court today from Dr. Prichard convinces the Court that the test is acceptable under [ ] Daubert. As to all three prongs he has testified that he has sufficient factual data. . . .

Resp. Ex. F at 396-97.

On appeal, with the help of appellate counsel, Petitioner challenged the trial

court's ruling that Dr. Prichard was qualified to testify as an expert. Resp. Ex. G. The state filed an answer brief (Resp. Ex. H), and the First DCA per curiam affirmed Petitioner's civil commitment without issuing a written opinion. Resp. Ex. J. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's determination that Dr. Prichard could testify as an expert witness regarding the Static-99R assessment was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See, e.g., U.S. v. Shields, No. 07-12056-PBS, 2008 WL 544940, at *1 (D. Mass. 2008) (interlocutory order holding Static-99 reliable under the standards set forth in Daubert and generally accepted as a reliable methodology within the relevant scientific community). Ground Two is due to be denied.

### *Ground Three*

Petitioner contends that the trial court erred in refusing to permit defense expert witness Dr. Pake to testify at trial. Doc. 10 at 15. He claims that Dr. Pake's testimony was necessary to refute Dr. Prichard. Id.

Petitioner, through appellate counsel, raised this claim on direct appeal. Resp. Ex. G. However, Respondents submit that Petitioner failed to present this claim as a federal constitutional claim to the state appellate court, rendering it unexhausted and

procedurally defaulted. Doc. 42 at 17. In his Supplemental Reply, Petitioner merely maintains that Dr. Pate would have contradicted Dr. Prichard's testimony. Doc. 10 at 10.

A review of Petitioner's initial appellate brief reveals that Petitioner did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. Resp. Ex. G at 43-45. Instead, Petitioner argued, in terms of state law only, that the trial court abused its discretion when it prohibited Petitioner from calling Dr. Pake as a witness. Id. (citing McCray v. State, 919 So. 2d 647 (Fla. 1st DCA 2006)). Consequently, the First DCA was never notified of any federal constitutional claim in Petitioner's direct appeal, and presumably, the First DCA exclusively applied state law in affirming the trial court's ruling. See Preston v. Sec'y Dept. of Corr., 785 F.3d 449, 461 (11th Cir. 2015) ("We can safely assume that when the Florida [appellate court] considered [petitioner's] appeal, it did so through the prism of this longstanding state doctrine, rather than federal law.").

Therefore, the Court finds that this claim has not been exhausted because Petitioner failed to fairly present it as a federal constitutional claim on direct appeal. The claim is procedurally barred, and Petitioner has not shown cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, the claim is denied.

### *New Claims in Supplemental Reply*

In his Supplemental Reply, Petitioner appears to raise new claims premised

upon trial counsel's ineffectiveness for failing to "uncover the sexual liaison between [Petitioner] and the doctor who was recommending his civil commitment through testimony at trial." See generally Doc. 45.

The Court need not consider the claims raised for the first time in Petitioner's Supplemental Reply brief. Petitioner was not granted leave to amend to add additional claims after Respondents filed their Supplemental Response. See Fla. R. Civ. P. 15(a)(2); see also Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (affirming district court's decision to not construe reply brief as a request for leave to amend § 2255 petition to add new claim as amendment would be untimely and futile); Garcia v. Sec'y, Dept. of Corr., No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4-5 (M.D. Fla., July 17, 2013) (noting that habeas petitioner's new claim raised in his reply was not authorized, where the Rules Governing Habeas Corpus Cases Under Section 2254 required all grounds for relief to be stated in the petition, and petitioner failed to seek leave to amend his petition after a response had been served); Ware v. Crews, No. 3:12cv524, 2013 WL 3546474, at *14 (N.D. Fla. July 11, 2013) (finding petitioner did not properly raise forfeiture of gain time claim where petitioner raised it for the first time in reply to respondents' answer, petitioner did not seek leave to amend petition, and reply expressly stated intent that document be deemed reply to answer). Instead, in his Supplemental Reply, Petitioner adds conclusory allegations regarding trial counsel's effectiveness and unsubstantiated allegations of abuse. The Court declines to construe these conclusory allegations lacking any support or discussion to be a proposed amended petition or even a request to amend his Petition. Thus, to the

extent Petitioner attempts to add new claims in his Supplemental Reply, the Court need not address them.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.  The Amended Petition (Doc. 10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.  The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.  If Petitioner appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

---

[9] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of April, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:  Isidor Hernandez, #991477
    Thomas H. Duffy, Esq.